**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Trina Creech, individually and on behalf of similarly situated persons, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No.: 2:16-cv-3087-PMD |
| v. | ) ) ) | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| JEM Pizza Group, LLC, JEM Restaurant Group of Florida, Inc., and Does 1–25, | ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court following an evidentiary hearing. For the reasons stated herein, the Court compels arbitration.

## **BACKGROUND/PROCEDURAL HISTORY**

This action arises out of Trina Creech's employment by Defendant JEM Pizza Group, LLC. Creech is a former pizza delivery driver who worked for several different Pizza Hut franchises. Her lawsuit involves Pizza Hut's driver-reimbursement program. Pizza Hut pays its delivery drivers minimum wage, along with a per-delivery reimbursement designed to cover additional costs to the drivers. That reimbursement allegedly fails to fully compensate drivers for the vehicle costs they incur, including gas, repairs, insurance, and depreciation. Creech alleges that those costs caused her effective wage, and the wages of other similarly-situated delivery drivers, to fall below minimum wage.

On December 27, 2017, the Court entered an Order that, among other things, compelled arbitration of this case subject to the terms of JEM Pizza Group's 2015 arbitration agreement. Creech filed a motion to reconsider that Order on January 4, 2017. After Creech's motion to

reconsider was fully briefed, the Court granted Creech's motion to reconsider in a Text Order stating the following:

> Out of an abundance of caution, and to provide a more developed record on appeal, the Court grants Plaintiff's motion to reconsider in order to hold the evidentiary hearing contemplated by § 4 of the Federal Arbitration Act. At that hearing, scheduled for Tuesday, March 14, at 2:00 PM, the Court will only consider evidence on the question of whether Plaintiff agreed to either the 2015 or 2016 arbitration agreements. AND IT IS SO ORDERED.

(Text Order, ECF No. 40.) Creech's motion to reconsider was based on a declaration in which she alleged that she never saw or signed the 2015 arbitration agreement.[1] Based on that declaration, Creech argued that the Court should reconsider its December 27 Order because she had created a genuine issue of material fact as to whether or not she had signed the 2015 arbitration agreement. Creech also asked the Court to hold that because she had created a genuine issue of material fact, she was not bound to arbitrate under the 2015 arbitration agreement.

As discussed in the footnote below, the Court credited Creech with creating a genuine issue of material fact by granting her motion to reconsider. Nonetheless, holding that she was not bound to arbitrate under the 2015 arbitration agreement would be wholly inappropriate until after any genuine issue of material fact was resolved. *See Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 716 (4th Cir. 2015) ("If unresolved questions of material fact prevent the court from ruling [on a motion to compel arbitration], . . . the court shall hold 'an expeditious and summary hearing' to resolve those questions." (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983))).

---

1. The Court did not consider the 2016 arbitration agreement in its December 27 Order because it believed the 2015 arbitration agreement to be validly executed. Although the Court stands by its December 27 Order, in the interest of judicial economy, the Court held the March 14 evidentiary hearing to resolve Creech's alleged genuine dispute of material fact as to whether she electronically signed the 2015 arbitration agreement. With that evidentiary hearing complete, any resulting appeal can proceed with a complete factual backdrop.

Section 4 of the Federal Arbitration Act ("FAA"), referenced by the Court's Text Order and by JEM Pizza Group in its response to Creech's motion to reconsider, provides that:

> [i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose.

9 U.S.C. § 4. As this Court recognized in *Gordon v. TBC Retail Group, Inc.*, section 4 allows the party disputing arbitration to demand a jury trial to resolve issues of fact bearing on an arbitration agreement's enforceability. No. 2:14-cv-3365-DCN, 2016 WL 4247738, at *11 n.13 (D.S.C. Aug. 11, 2016). Here, Creech has never demanded such a jury trial in spite of numerous opportunities to do so.[2] As a result, the Court proceeded with an expeditious, non-jury evidentiary hearing to resolve the genuine issues of material fact. *See id.* Having set forth the relevant background and procedural history of this case, the Court now makes the following findings of fact and conclusions of law based on a preponderance of the evidence introduced at the hearing.

### **FINDINGS OF FACT**

1. Creech worked at JEM Pizza Group on three separate occasions: (1) 2006 to 2013; (2) September 2015 to December 2015; and (3) June 2016.

---

2. Creech could have requested a jury trial on this issue before the first hearing on December 19, 2016, in her motion to reconsider, or by motion in advance of the March 14, 2017 hearing. Creech did not do so. Accordingly, the Court held an expeditious, non-jury evidentiary hearing in accordance with § 4 of the FAA.

2. During all those periods, JEM Pizza Group had a business practice of requiring every employee to complete new hire paperwork each time that the employee is hired, regardless of whether the employee previously worked for JEM Pizza Group.

3. JEM Pizza Group added a collective-action restriction to its job application form in 2014 that required all arbitration to be on an individual, rather than class-wide, basis.

4. In order to apply to work for JEM Pizza Group in 2015 or 2016,[3] an applicant had to visit jobs.pizzahut.com to fill out an application. JEM Pizza Group did not have paper applications in 2015 or 2016.

5. JEM Pizza Group's in-store computers could not access the jobs.pizzahut.com website. The in-store computers could only access already completed job applications.

6. In order to submit a job application to JEM Pizza Group in 2015 or 2016, an applicant was required to fill out the entire online application and electronically sign or acknowledge each of the various provisions included in the application, including the arbitration provision containing the collective-action restriction. The applicant's application would never reach JEM Pizza Group unless the employee filled out the whole application online.

7. Creech filled out the online application when she applied for a position at JEM Pizza Group in 2015, and in so doing, agreed to the arbitration provision contained in the application.

8. Creech used the last four digits of her social security number to indicate her acceptance of the provisions in the application.

---

3. JEM Pizza Group's motion to compel arbitration asks the Court to conclude that Creech electronically signed either the 2015 or the 2016 arbitration agreement. Both agreements contain a collective action restriction. Because JEM Pizza Group does not specifically request either the 2015 or the 2016 agreement, and because Creech has challenged the 2016 agreement on other grounds, the Court only analyzes the 2015 agreement. The Court expressly makes no conclusion as to the validity of the 2016 arbitration agreement at this time.

9. JEM Pizza Group never has access to the applicant's four-digit code used to indicate acceptance of the application's provisions. JEM Pizza Group also does not provide that four-digit code to its applicants; rather, the applicants choose their own code.

10. At the March 14 hearing, the following documents were introduced into evidence: (1) Creech's 2008 employment application; (2) Creech's 2015 W-4; (3) JEM Pizza Group's terms of employment notice; and (4) JEM Pizza Group's employee drug use and drug testing policy. Creech signed all of those documents.

11. Creech stated that she was available to work on August 31, 2015, the date she submitted her 2015 application. However, Creech did not start working until September 24, 2015.

12. Creech knows Katherine Hanna because Creech asked Hanna for a job at the Sangaree Pizza Hut and because Creech's sister works with Hanna at the Sangaree Pizza Hut location.

13. Shift manager Cheri Nabors did not fill out Creech's 2015 job application.

## **CONCLUSIONS OF LAW**

Once a litigant moves to compel arbitration under the FAA, the district court determines whether a matter should be resolved through arbitration depending on (1) whether a valid arbitration agreements exists and, if so, (2) whether the dispute falls within the scope of the arbitration agreement. *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986). The Supreme Court has consistently encouraged a "healthy regard for the federal policy favoring arbitration." *Levin v. Alms & Assocs.*, 634 F.3d 260, 266 (4th Cir. 2011) (internal quotation marks and citation omitted).

Here, the Court has already concluded in its December 27 Order that this dispute falls within the scope of all three of the arbitration agreements. Thus, the remaining question is

whether the 2015 arbitration agreement was validly executed. It was. The evidence introduced at the March 14 hearing clearly showed that the policies and procedures JEM Pizza Group had in place in 2015 required job applicants to fill out an online application that included an arbitration provision containing the collective-action restriction. JEM Pizza Group's witnesses, all of whom the Court found credible, confirmed that the online application process was the only way that an employee could be hired in 2015 and 2016. Moreover, JEM Pizza Group's Vice President of Human Resources testified that there was no way for a former employee to be re-hired without filling out the new hire paperwork. Based on the above, there is no way that Creech could have been hired without the online application being filled out. However, that does not end the Court's inquiry.

Creech also alleges that someone else must have filled out the employment application on her behalf. The Court finds that argument unpersuasive for several reasons. First, the Court did not find Creech to be a credible witness. While she was being cross-examined, Creech repeatedly denied that her signature was on several documents introduced by JEM Pizza Group, including a W-4 form, a terms of employment notice, and an employee drug use and drug testing policy. Creech also denied that the signature on a 2008 JEM Pizza Group employment application was hers.[4] Initially, Creech even claimed that the signature on her own declaration was not hers. Eventually, Creech conceded that it was her signature on some of the documents, but maintained that she had never signed others. As stated at the conclusion of the hearing, and as a finding of fact above, the undersigned has determined that Creech signed each of those documents. Additionally, Creech's testimony that she would not have listed a Katherine as a reference on a job application lacks credibility. Katherine Hanna testified compellingly that she and Creech were acquainted and that Creech's sister worked with Hanna at the Sangaree Pizza

---

4. Creech previously admitted that she had signed the 2008 employment application.

Hut. Moreover, Katherine Hanna's position at the Pizza Hut in Sangaree makes her a logical reference for Creech's application to work for another Pizza Hut.

Creech also argues that several discrepancies in the August 31, 2015 job application screenshot indicate that someone else filled out the application. The Court disagrees. In addition to Creech's credibility issues, several of Creech's arguments about her application are unavailing. First, she testified that she never worked at Pizza Hut, Inc. and would not have listed Pizza Hut, Inc. on any job application. However, the questions on the application lead the Court to believe that the applicant would select whether they had worked for KFC, Pizza Hut, or Taco Bell first, and then they would specify which franchise or location of that restaurant for which they had worked. Thus, it would be perfectly natural for Creech to have selected Pizza Hut, Inc. before specifying that she worked at the Pizza Hut in Goose Creek. As for Creech's dispute about working from 2007 to 2014, Creech testified that she worked at JEM Pizza Group from 2007 to 2013, and again in 2014.[5] As detailed below, it appears to the Court that whether or not Creech worked at JEM Pizza Group from 2007 to 2014, at minimum she worked for JEM Pizza Group from 2007 to 2013, and at some Pizza Hut location, whether in Goose Creek or Wichita, for the remainder of that time period.

Creech also claims that whoever filled out the application for her used the last four digits of her social security number because they had that information from her previous job application. Although that is plausible, an equally plausible explanation is that Creech used a number with which she was intimately familiar for her four-digit code. The testimony was clear that JEM Pizza Group never knew what an employee used as their four digit code, and that employees created that code, rather than having it provided for them. Although that does not, by

---

5. It is unclear whether Creech actually worked at JEM Pizza Group in 2014. Creech testified that she did, but there is no mention of that time period in her previous filings. Creech also testified that she worked at a Pizza Hut in Wichita at some point in 2013 and 2014.

itself, preclude someone from filling out the application on Creech's behalf, the Court is convinced that this is not a sufficient basis for concluding that Creech did not fill out the application and electronically sign the arbitration agreement contained therein. Viewing these indicia in light of the Court's credibility determination as to Creech, the Court concludes that Creech electronically signed the 2015 arbitration agreement. As a result, this matter must proceed to arbitration subject to the terms of that agreement, including the collective action restriction.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that this matter proceed to arbitration subject to the terms of the 2015 arbitration agreement. Accordingly, this case is **STAYED** pending arbitration.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**March 16, 2017**
**Charleston, South Carolina**